UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LEE FOSTER,<br><br>                              Plaintiff,<br><br>             v.<br><br>A. VERKOUTEREN,<br><br>                              Defendant. | Civil No.   08cv0554-CAB<br><br>**ORDER:**<br><br>1) **DENYING DEFENDANT'S MOTION TO DISMISS [Doc. No. 15]; and,**<br><br>2) **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. No. 14]** |

   Plaintiff Richard Lee Foster, proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against A. Verkouteren, a prison officer at R.J. Donovan Correctional Facility ("Donovan"), where Plaintiff was incarcerated.  The parties have consented to the undersigned's jurisdiction to decide all matters in this case, including trial and entry of a final judgment.  [Doc. No. 9.] On June 5, 2009, Defendant moved to dismiss Plaintiff's complaint for failure to exhaust administrative remedies.  [Doc. No. 15.]  Defendant also moved for summary judgment, arguing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  [Doc. No. 14.]  On June 10, 2009, the Court notified Plaintiff of these two motions and informed Plaintiff that if he wished to oppose these motions, his oppositions were due on June 16, 2009.  [Doc. No. 16.]  Plaintiff filed a late opposition on July 24, 2009 [Doc. No. 20], which this Court accepted.  Defendant has not filed a reply. Having carefully considered the papers submitted and the relevant legal authority, the Court hereby

**DENIES** Defendant's motion to dismiss and **GRANTS** Defendant's motion for summary judgment.

## I. BACKGROUND

According to the Complaint, on August 25, 2007, at approximately 7:50 p.m., Plaintiff was instructed by Defendant Verkouteren to go to his cell. (Compl. 3.)[1] Plaintiff informed Verkouteren that he was feeling stressed out, did not want to have a new cell mate, did not want to be at Donovan any longer, and would rather go to administrative segregation. Verkouteren told Plaintiff, "The only way you will go to the hole is if you get up and swing on one of the officers or myself." Plaintiff said he would not swing at Verkouteren, but he did not want to go to his cell. Verkouteren directed another correctional officer to cuff Plaintiff and take him back to his cell. Plaintiff stepped away from the officer, and Verkouteren "proceeded to sock me in my facial area approximately four times with closed fist(s)." (*Id.*) "After being socked/punched by Verkouteren approximately four times I then from spontaneous reaction had pushed Verkouteren one time away from me in order to ward off the blows which he had been inflicting upon me." (*Id.*) Other correctional officers then tackled Plaintiff to the ground. (*Id.* at 13.) Plaintiff was then taken to have a medical evaluation. (*Id.* at 14.) Plaintiff later had some "minor pain" and noticed three small drops of blood on his shirt. (*Id.* at 15.) He was taken to the prison hospital, but it is not clear what treatment he received at the hospital. Plaintiff later appeared at a disciplinary hearing where he was found guilty of battery on Verkouteren. (*Id.* at 16.) As a result, Plaintiff was placed in the segregated housing unit for 12 months. (*Id.* at 19.)

On August 31, 2007, Plaintiff filed an inmate appeal form alleging that Verkouteren had committed a battery on him. (*Id.* at 22.) He requested that the matter be addressed in "a real court of law." (*Id.*) The appeal was "partially granted" on September 30, 2007. (*Id.* at 23.) In the response, Plaintiff was informed that his appeal was "processed as a staff complaint appeal inquiry." (*Id.* at 21.) He was also informed that an inquiry into the allegation had been conducted. Plaintiff then sent a letter to the district attorney's office on December 18, 2007. (*Id.* at 11-20; E. Franklin Decl. Ex. C.) In the letter, he recounted the incidents of August 25, 2007. He complained that his appeals rights were being violated and he had not received any justice in prison. (Compl. at 20.) He asked the district attorney to "please help me if you will/can". (*Id.*) The district attorney's office forwarded the letter to the warden at

---

[1] Citations to the Complaint refer to the page numbers assigned by CM/ECF.

Donovan. (E. Franklin Decl. ¶ 10.) The warden asked that the appeals coordinator, E. Franklin, respond to the letter. (*Id.* ¶ 11.) On February 25, 2008, E. Franklin responded to Plaintiff's letter and informed him that the appropriate method for expressing his concerns was the California Department of Corrections Form 602, Inmate/Parolee Appeal Form. (*Id.* ¶ 12 & Ex. D.)[2]

Plaintiff filed the instant Complaint in this Court on March 24, 2008. [Doc. No. 1.] When Plaintiff filed his Complaint, he consented to magistrate judge jurisdiction to conduct any and all proceedings in the case, including trial and entry of final judgment. (*Id.* at 7.) On October 30, 2008, Defendant also consented to magistrate judge jurisdiction. [Doc. No. 8.] On December 1, 2008, the district judge entered an order reassigning the case to the undersigned magistrate judge. [Doc. No. 9.] This Court issued an order setting pretrial deadlines on December 4, 2008. [Doc. No. 11.] On June 5, 2009, Defendant filed a motion to dismiss the case for failure to exhaust [Doc. No. 15] and a motion for summary judgment [Doc. No. 14]. The Court addresses each of these motions below.

## II. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST

**A. Legal Standard**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Non-exhaustion under § 1997e(a) is an affirmative defense. That is, defendants have the burden of raising and proving the absence of exhaustion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). In deciding a motion to dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. If the court concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is dismissal without prejudice. *Id.* at 1120.

California's Department of Corrections ("CDC") provides a four-step grievance process for prisoners who seek review of an administrative decision or perceived mistreatment. Within 15 working days of "the event or decision being appealed," the inmate must ordinarily file an "informal" appeal,

---

[2] Plaintiff also filed another 602 inmate appeal form appealing the disciplinary hearing finding that he committed battery upon Verkouteren. (E. Franklin Decl. Ex. E.) That form was returned to him as duplicative of the first appeal. (*Id.* ¶ 13.)

through which "the appellant and staff involved in the action or decision attempt to resolve the grievance informally." Cal. Code Regs., tit. 15, §§ 3084.5(a), 3084.6(c).[3] If the issue is not resolved during the informal appeal, the prisoner next proceeds to the first formal appeal level, usually conducted by the prison's appeals coordinator. *Id.* §§ 3084.5(b), 3084.6(c). If denied at that level, the inmate can appeal to the second level of formal review conducted by the institution head or his/her designee. *Id.* at § 3084.5(c). The third and final level of formal review, called the "Director's Level," is conducted by the Director of CDC or his/her designee. Cal. Dept. of Corr. Operations Manual § 54100.11; *Nichols v. Logan*, 355 F. Supp. 2d 1155, 1161 (S.D. Cal. 2004).[4]

**B. Analysis**

Defendant argues that Plaintiff failed to exhaust his administrative remedies, because he only completed the first formal level of review. (Def. Mem. P. & A. in Supp. Mot. to Dismiss 4.) Defendant argues that Plaintiff was required to submit a written grievance through all formal levels of review, but he failed to do so. (*Id.* at 5.) The Court disagrees and finds that Plaintiff had properly exhausted "such administrative remedies as are available" before proceeding to federal court.

On August 31, 2007, Plaintiff filed a 602 inmate appeal form alleging that Verkouteren had committed a battery on him. (Compl. 22.) The appeal was "partially granted" on September 30, 2007. (*Id.* at 23.) Plaintiff was informed that his appeal was "processed as a staff complaint appeal inquiry." (*Id.* at 21.) He was also informed that an inquiry into the allegation had been conducted. The response letter also contained the following two paragraphs:

> ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, results of any inquiry/investigation will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process.

---

[3] There are eight situations in which attempted resolution at the informal level is not required. *See* Cal. Code Regs., tit. 15, § 3084.5(a)(3). As relevant here, the informal level is not required when a grievance involves "[a]lleged misconduct by a departmental peace officer." *Id.* § 3084.5(a)(3)(G).

[4] Department of Corrections regulations provide that "[t]he decisions of the Departmental Review Board which serve as the director's level decision, are not appealable and conclude the inmate's or parolee's departmental administrative remedy pursuant to section 3376.1." Cal. Code Regs., tit. 15, § 3084.1(a); *see also id.* § 3084.5(e)(2) ("Third level review constitutes the director's decision on an appeal, and shall be conducted by a designated representative of the director under supervision of the chief, inmate appeals.").

>  Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

(*Id.*)

There is no evidence that Plaintiff filed anything in the second and third levels of formal review, nor does Plaintiff argue so in his opposition. Defendant argues that because Plaintiff never appealed his grievance to the second and third levels of formal review, he did not properly exhaust his administrative remedies. However, the analysis does not end there. The PLRA requires that the prisoner exhaust "such administrative remedies as are available." 28 U.S.C. § 1997e(a). In *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), the Ninth Circuit reiterated the holding in *Booth v. Churner*, 532 U.S. 731 (2001), that the PLRA does not require a prisoner to exhaust the prison grievance process when no pertinent relief can be obtained through the internal process. *Brown*, 422 F.3d at 934-35. "Without the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." *Booth*, 532 U.S. at 735 n.4.

In *Brown*, the Ninth Circuit considered two cases with similar factual backgrounds. In one of the cases, the prisoner claimed a correctional officer assaulted him. *Brown*, 422 F.3d at 930. He made a formal grievance to prison officials and requested "to be compensated for these abuses, and blatant disregard for my constitutional rights." *Id.* The appeal was denied at the first level of review. The prisoner pursued the second level of formal review. *Id.* at 931. At this second level, the grievance was classified as a "staff complaint" and it was "partially granted." The prisoner was informed:

>  A thorough investigation will be conducted into your allegations and evaluated in accordance with Departmental Policies and Institutional Procedures. The matter has been referred to the Office of Internal Affairs. You shall be notified by the Office of Internal Affairs of the disposition of your complaint upon completion of the investigation, in accordance with [California Penal Code § ] 832.7 and the Department Operations Manual Section 31140.4.2.
>
>  It is the Administration's responsibility to determine appropriate action taken against any employee, if deemed necessary. Additionally, inmates are not apprised of any disciplinary action that may have been taken against a staff member. It is beyond the scope of the appeals process to grant you monetary compensation.

*Id.* The prisoner did not proceed to the third, and final, level of formal appeal.

The district court denied the defendants' motion to dismiss in that case, because "in granting

plaintiff's appeal in part and referring the complaint for investigation by the Office of Internal Affairs, plaintiff was provided all of the relief that the administrative process could provide." *Id.* at 932. The defendants appealed the decision, and the Ninth Circuit affirmed, finding that the plaintiff did exhaust "such administrative remedies as are available." *Id.* at 940. The court explained, "Once an agency has granted some relief and explained that no other relief is available, 'the administrative process has not been obstructed. It has been exhausted'." *Id.* at 936, citing *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002). The court concluded, "the Department of Corrections did not establish that once it had ordered an investigation into [the correctional officer's] alleged misconduct through the separate 'staff complaint' process, it had any remaining 'authority to act on the subject of the complaint' [] through the grievance procedure." *Brown*, 422 F.3d at 937 (citation omitted). In examining the Administrative Bulletin of the Department of Corrections, issued on August 21, 1998, the court found that "staff misconduct grievances are to be investigated *only* through the staff complaint process, thereby negating any possibility of a parallel investigation through the appeal process." The prisoner, therefore, was not obligated to appeal to the third level of formal appeal. He had exhausted the administrative remedies available to him. *Id.* at 938.

The facts of that case in *Brown* are very similar to the instant case. In the instant case, Plaintiff filed a 602 inmate appeal form complaining that he had been assaulted by Sergeant Verkouteren. Under "action requested," Plaintiff indicated he wanted Verkouteren to be prosecuted for his actions. (Compl. 22.) At the first level review, the grievance was "partially granted." (*Id.* at 23.) A letter attached to the grievance form informed Plaintiff that the issue was being processed as a staff complaint, that an investigation would be conducted, but that all staff personnel matters were confidential. (*Id.* at 21.) Therefore, the results of the investigation would not be shared with Plaintiff. Further, Plaintiff was informed that any administrative action regarding staff was beyond the scope of the staff complaint process. (*Id.*) At this point, it is unclear to the Court what further relief Plaintiff could have sought by seeking a second level of formal review. As the Ninth Circuit reasoned in *Brown*, an investigation through the staff complaint process was the only way that staff misconduct grievances are processed. As such, the possibility of another investigation or other relief for the prisoner did not exist.

Defendant argues that the response to Plaintiff's complaint contained instructions for appealing

the decision. Plaintiff was told that if he wished to appeal the decision, he had to submit his complaint through all levels of appeal up to, and including, the Director's level of review. Defendant argues that, unlike in *Brown*, Plaintiff here was "specifically advised" to submit his appeal to the second level review. (Def. Mem. 8.) However, the advisement appears to be standard language and not a clear indication that further relief was available to Plaintiff. As the Ninth Circuit pointed out in *Brown*:

> That it may be advisable for an inmate to appeal every issue to the highest level to avoid any question as to whether the administrative process has been adequately exhausted does not alter our conclusion. While "over-exhaustion" may be wise so as to expedite later litigation, the fact remains that *Booth* does not require an inmate to continue to appeal a grievance once relief is no longer "available."

*Brown*, 422 F.3d at 935 n.10. Plaintiff could have appealed to the second and third levels of review, but that does not mean that he was required to do so to adequately exhaust his claim.

Defendant also argues that Plaintiff could have submitted an appeal to the second-level review to enforce the first-level decision. The Court finds this argument unavailing, because the argument assumes that the CDC would not conduct an investigation as it said it would and per its own policies and procedures. The Ninth Circuit specifically noted that "over-exhaustion" is not necessary. As previously discussed, Defendant bears the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies. *See Wyatt*, 315 F.3d at 1117-19 & nn.9 & 13. Defendant takes the position that there were additional remedies available to Plaintiff but offers up very little in terms of what those additional remedies were. Defendant has not carried his burden on the issue of exhaustion. Therefore, Defendant's motion to dismiss is **DENIED**.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material

fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

**B. Analysis**

Plaintiff makes one claim, that Defendant used excessive force against him in violation of his right to be free from cruel and unusual punishment. In a claim of excessive force in violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The standard for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment is the unnecessary and wanton infliction of pain. *Whitley*, 475 at 319. A constitutional violation can be established only if force was used maliciously and sadistically in order to cause harm. *Id.* at 320-21. The court is required to balance several factors focusing on the reasonableness of the officer's situation given the circumstances. *Id.* at 321. These factors are: (1) the need for application of force; (2) the relationship between the need and amount of force used; (3) the extent of the injury inflicted; and (4) whether force was applied in a good faith effort to maintain and

restore discipline. *Id.*; *Hudson*, 503 U.S. at 7.  Applying these principles to the instant case, the Court concludes that Plaintiff's claim against Defendant Vertoukeren is appropriate for summary judgment.

       The parties do not dispute that Plaintiff refused to go back to his cell.  Nor is there a dispute that Verkouteren struck Plaintiff.  Verkouteren contends the blows were necessary to maintain order and to obtain Plaintiff's compliance with a lawful order. (Mem. of P. & A. in Supp. of Mot. for Summ. J. 5.) According to Verkouteren's declaration, when Plaintiff initially refused to return to his cell, Correctional Officer Williams, who was on duty at the time, notified Sergeant Verkouteren. (Verkouteren Decl. ¶ 2.) Verkouteren and Officer Jackson proceeded to the Housing Unit 13 day room. (*Id.*)  When Verkouteren asked Plaintiff why he did not want to go back to his cell, Plaintiff said that he did not want a "cellie" and that he wanted to move to administrative segregation. (*Id.* ¶ 3.)  Verkouteren told Plaintiff he could not go to administrative segregation, and Plaintiff again refused to go to his cell. (*Id.* ¶ 4.)  Verkouteren directed Officer Jackson to put Plaintiff in handcuffs and escort him back to his assigned cell.  Plaintiff stood up in a "bladed fighting stance" and struck at Verkouteren with his closed fists.  Verkouteren blocked Plaintiff's right hand and struck Plaintiff in the chin with his right fist. (*Id.* ¶ 5.)  Three other officers, who were present at the time of the incident, corroborated Verkouteren's version of the events. (Williams Decl.; Jackson Decl.; Strong Decl.)

       Plaintiff, in his opposition, characterizes Verkouteren's actions as that of a "rogue cop" and claims Verkouteren's version of the events is a "blatant lie." (Pl.'s Opp'n. 1, 3.)  However, Plaintiff does not dispute that he repeatedly refused to go back to his cell.  After he refused to return to his cell several times, Verkouteren directed Officer Jackson to handcuff Plaintiff so he could be escorted back to his cell. At this point, even by Plaintiff's version of the events, Plaintiff resisted being handcuffed: "I then stood up and took a couple of steps backwards from c/o Williams." (Compl. 3.)  Verkouteren reasonably interpreted this as an aggressive stance and acted to prevent the situation from escalating further.  The force that Verkouteren used was necessary to bring Plaintiff in compliance with the officers' order to return to his cell. *White v. Roper*, 901 F.2d 1501, 1507.  In *White*, the plaintiff claimed that excessive force was used against him after he refused an order to enter another inmate's cell. *Id.* at 1506-07.  The officer forcibly subdued the plaintiff when he backed away from the cell. *Id.* at 1503. The plaintiff suffered a minor cut and some bruises. *Id.*  The court rejected the plaintiff's claim of

excessive force, finding that an officer was not "excessive" or "brutal" in using force against a prisoner who disobeyed orders. *Id.* at 1507. In this case, given that Plaintiff was repeatedly disobeying orders, it was within Verkouteren's authority to use reasonable force to control him.

Plaintiff has not alleged any significant or permanent injury. Although the absence of injury does not preclude a claim for cruel and unusual punishment, it is one factor in determining "'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson*, 503 U.S. at 7 citing *Whitley*, 475 U.S. at 321. In *Hudson*, the U.S. Supreme Court held that the injury suffered was not *de minimis* where an inmate suffered bruises, swelling, loosened teeth and a cracked dental plate as a result of a beating at the hands of two guards. *Id.* In contrast, Plaintiff in this case offers no evidence to support any serious injuries sustained from the force Verkouteren used upon him. Fairly soon afer the incident, Plaintiff was taken to the medical office to have a medical evaluation. (Compl. 13.) Plaintiff provides no medical report from this evaluation, and it is unclear what, if any, treatment was given to Plaintiff. After the medical evaluation, Plaintiff was escorted to Lieutenant Smith's office for an interview. (*Id.* at 14.) During the interview, he felt some "minor pain" under his nose, and he rubbed off some dried blood from his nose onto his pants. (*Id.* at 15.) He also notice three small blood spots on his shirt. According to Plaintiff, a correctional officer witnessed the dried blood and the blood spots, but Plaintiff has provided no declaration from this correctional officer. Plaintiff was also taken to the main prison hospital, where a medical evaluation was performed. (*Id.*) Plaintiff indicates that the evaluating physician also saw the dried blood, but again, there is no evidence from that medical evaluation to support the conclusion that Verkourteren used force "maliciously and sadistically" against him.

Because correctional officers must balance the need to "maintain and restore discipline" through force against the risk of injury to inmates, correctional officers "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321. In a prison setting, temporary forcible restraint does not deny a life necessity or present a substantial risk of serious harm. Since routine discomfort is "part of the penalty that criminal offenders pay for their

offenses against society," only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Under the circumstances of this case, the Court finds that Defendant reasonably perceived that Plaintiff posed a threat, that the use of force was justified, that the amount of force used was reasonable, and that the extent of Plaintiff's injury was minimal. In short, under the *Hudson* factors, Defendant did not use excessive force.

Plaintiff fails to offer specific facts and/or nonconclusory allegations that show Defendant Verkouteren was sadistic and malicious in his use of force. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (conclusory allegations are not sufficient to defeat a motion for summary judgment). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). Plaintiff has failed to meet his burden. There is no genuine issue of material fact, and Defendant is entitled to judgment as a matter of law. *Celotex Corp. v. Cattrett*, 477 U.S. at 323. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.[5]

### IV.  CONCLUSION

Based upon the foregoing discussion, **IT IS HEREBY ORDERED**:

1) Defendant's motion to dismiss for failure to exhaust is **DENIED**;

2) Defendant's motion for summary judgment is **GRANTED**;

3) The clerk of the court shall close the case.

DATED: August 12, 2009

**CATHY ANN BENCIVENGO**
United States Magistrate Judge

---

[5] Defendant also argues that summary judgment should be granted under the "favorable termination doctrine," because Plaintiff was found guilty of battery during a disciplinary hearing in the prison. According to Defendant, if Plaintiff were to prevail on his excessive force claim here, it would undermine the guilty finding at the disciplinary hearing. (Def.'s Mem. 7.) Defendant has not convinced the Court that a doctrine defining the boundary between civil rights actions and habeas corpus proceedings is applicable in this case to bar Plaintiff's claim. The Court, however, need not reach that question, because the Court has determined summary judgment should be granted, because there is no genuine issue of material fact as to whether Verkouteren acted "sadistically and maliciously."